Sarah Grossman-Swenson, SBN 11979
Kimberley C. Weber, SBN 14434
Luke N. Dowling, SBN 16524
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
1630 South Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Phone: (702) 386-5107
Facsimile: (702) 386-9848
Email:  sgs@msh.law
          kweber@msh.law
          ldowling@msh.law

*Attorneys for Plaintiff Tatyana Silva*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Tatyana Silva, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Panasonic Corporation of North America, Inc., d/b/a/ Panasonic Energy Corporation of North America, Inc., a Delaware corporation; and DOES 1-10, | |
| Defendants. | |

## INTRODUCTION

1.     Plaintiff Tatyana Silva ("Plaintiff" or "Ms. Silva") brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") against Defendant Panasonic Corporation of North America, Inc. d/b/a/ Panasonic Energy Corporation of North America, Inc. (hereinafter "Panasonic" or "Defendant") for sex discrimination, discrimination on the basis of national origin, for sexual harassment,

and for the retaliation Ms. Silva faced after reporting discrimination and sexual harassment in the workplace, based on the actions of Panasonic and its employees, including Chief Information Officer (CIO) Justin Herman; Director of Digital Transformation Group (DTG) Neeraj Mittra; Project Management Office (PMO) Director Eli Venecia; Vice President of Human Resources (HR) Tim Burke; and Executive Vice President Wes Sloan.

2.    Instead of addressing the rampant sex discrimination, sexual harassment, and national origin discrimination in its workplace, Panasonic fired Ms. Silva for speaking up about blatantly discriminatory and untenable working conditions.  Panasonic treated Ms. Silva shamefully.

3.    Ms. Silva has over 15 years of experience in technology and analytics.  She has a Master of Science in Predictive Analytics from Northwestern University, and a Bachelor of Science, with a Major in Finance and a Minor in Computer Science, from the University of Utah. Prior to her career in technology, she participated in the 2002 Olympics on the Kazakhstan Women's National Ice Hockey Team.

4.    Ms. Silva was hired in August 2021 by Panasonic as an Agile Engineering Program Manager to build a "Smart Factory" within the Engineering Program Management group at the Gigafactory in Sparks, Nevada.  She was promoted to Senior Program Manager within a few months.

5.    For nearly a year, Ms. Silva worked successfully within Panasonic's Digital Transformation Group ("DTG") on its "Smart Factory" program, which she believed had the potential to change the world and save humanity from energy dependency. She was passionate about the work and received positive feedback about her work.

6.    Unfortunately, in mid-2022, Panasonic hired a new Chief Information Officer, Justin Herman, and a new Director of DTG, Neeraj Mittra.  Mr. Mittra became the director of the program that Ms. Silva was working on under the supervision of Mr. Herman.

7.    Initially, Mr. Herman worked closely with Ms. Silva on the DTG

portfolio.  Ms. Silva was told by other employees that Mr. Herman was pleased with her work.

8.    However, things changed in July 2022, when Mr. Mittra, who identified himself as a male of Indian origin, met Ms. Silva for the first time.  In their first meeting, he asked Ms. Silva "where she was from."  She explained that she was from Kazakhstan, and he made a facial expression indicating he did not like her response. From that day on, Mr. Mittra acted as if speaking to Ms. Silva was beneath him.

9.    About a week later, a colleague (Employee 1) warned Ms. Silva to "watch her back," because Mr. Mittra did not like her.  Ms. Silva was surprised because they had barely interacted.  Employee 1 related that Mr. Mittra had told Employee 1 that Ms. Silva did not act like women from India, and that "women in India do not behave like that," referring to Ms. Silva.  Employee 1 told Ms. Silva that she needed to "strike" or "stroke" Mr. Mittra's ego.

10.    Two days later, Ms. Silva was excluded from all DTG meetings convened by Mr. Mittra and told that she was "not technical" so the meetings were not for her – despite her formal education and technical background in predictive analytics, advanced technology issues, and computer science.

11.    In August 2022, she was removed from working on Panasonic's Smart Factory project entirely. She raised the issue with CIO Herman, and when she asked Mr. Herman why she was being removed from all her projects, he told her she "did not fit."

12.    Ms. Silva was devastated by her removal from the Smart Factory project, and she complained to Mr. Herman and to Human Resources about the blatantly sexist treatment that she was receiving at work. In September 2022, she was informed that she was being removed from every DTG project she was working on at Panasonic. HR did nothing to fix the situation.  Instead, HR representative Michael Togbe told Ms. Silva that Mr. Mittra had told her direct supervisor to "manage her out" by giving her menial tasks so that she would quit.

13.    Ms. Silva asked Mr. Togbe directly why she had been removed from

working on the Smart Factory, and why Mr. Mittra thought it was appropriate to discriminate against her because she was a woman and not Indian.  Mr. Togbe did not give her any answers.  Instead, he told her that Mr. Herman wanted her to stop being so upset and to "smile" and that they wanted "old Tanya back."

14.    During the fall of 2022, multiple women supervised by or working with Mr. Mittra left Panasonic due to his sexist behavior.  In December, several of Ms. Silva's colleagues separately asked her to return to working on the Smart Factory, telling her the work was going badly without her.

15.    Around December of 2022, she was denied a promotion to PMO Director in favor of a less qualified male employee named Eli Venecia.  Mr. Venecia then became her direct supervisor in December 2022.

16.    Mr. Venecia initially seemed friendly and tried to help Ms. Silva. He provided her with a glowing letter of recommendation for an MBA program.

17.    Once Mr. Venecia became Director of PMO, he told Ms. Silva he "did not need her technology skillset as he did not have any engineering or technical projects for her," which was not true, as Ms. Silva was managing the Panasonic Strategic Portfolio and had received numerous requests for engineering and technical project management work.  Instead, he said he needed a "secretary, like Nicole Cook was a chief of staff to Allan Swan, Panasonic's President." Ms. Silva told him she was willing to do anything if she could get her Smart Factory project back.

18.    But then Mr. Venecia began to invite her for one-on-one meetings in the cafeteria, buying her (non-alcoholic) drinks, and making other requests to spend time together outside of the workplace that made Ms. Silva feel uncomfortable, which she declined.

19.     Following Mr. Venecia's uncomfortable behavior and inappropriate assignments, Ms. Silva asked Panasonic's Head of Coaching to speak to Mr. Venecia about his behavior and to provide him with some education about sexual harassment.

20.    Just two days after Ms. Silva spoke with Panasonic's Head of Coaching,

Mr. Venecia began to make erroneous and false claims that Ms. Silva's performance was subpar when he had nothing but positive feedback for her performance in the past. Mr. Venecia was retaliating against Ms. Silva for communicating her concerns about his behavior to the Head of Coaching. He issued a "Memorandum" criticizing her behavior at work.

21.    On or about May 28, 2023, Ms. Silva filed an EEOC charge regarding Panasonic's discriminatory treatment of her. Ms. Silva informed Defendant that she had filed an EEOC charge.

22.    At the end of June, Ms. Silva had a conversation with Rene Perez Cabrera, HR Director and Jarelle Goforth, his assistant, where Mr. Cabrera informed her that Panasonic legal counsel Zach Shea had concluded investigating her complaints and had found her complaint regarding Mr. Mittra's and Mr. Venecia's behavior was "unsubstantiated".

23.    Mr. Cabrera stated, "it does not mean it did not happen, it just means there is no evidence," and stated that because it was unsubstantiated, no one was getting fired. He asked Ms. Silva if she was willing to work with Mr. Venecia the "same as before it all had happened." Despite being upset, Ms. Silva told him yes, because she continued to believe in Panasonic's work and felt she had no other choice.

24.    In mid-July 2023, Ms. Silva was informed by Panasonic's Executive Vice President, Wes Sloan, that she was being terminated because she violated the "behavioral" part of Mr. Venecia's "Memorandum," and because she had allegedly filed a "false" claim of sexual harassment.

25.    During the meeting in which they terminated her, Ms. Silva asked Mr. Sloan and Mr. Burke why they were supporting Mr. Mittra's behavior, and she told them that every woman who was harassed by Mr. Mittra would testify against him and that his behavior was not unsubstantiated. However, they did not reconsider her termination.

26.    In fact, Ms. Silva was terminated on the basis of her sex (female), national origin (non-Indian), for raising concerns about how she and multiple other women were

treated by Mr. Mittra and Mr. Herman, and in retaliation for complaining of discrimination and/or for not reciprocating Mr. Venecia's romantic interest in her and complaining about his sexually harassing behavior.

27.    Panasonic, through its utter failure to adequately investigate and respond to sex discrimination, sexual harassment, and national origin discrimination, fostered a culture permissive of sexism, discrimination and prejudice, and permitted and encouraged retaliation.

28.    Ms. Silva's experience was part of a wider pattern and practice of discrimination and retaliation at Panasonic. After Mr. Herman and Mr. Mittra were put in charge, other women in technical departments made the reasonable decision to simply leave rather than put up with sexist nonsense.

29.    But Ms. Silva felt she could not in good faith encourage her own daughter or any other young woman in the United States to pursue a career in technology if she could not stand up to discrimination.  For her daughter, she felt she had to persevere.

30.    Despite Panasonic's utter failure to address any of the problems raised by Ms. Silva, she tried to continue to do her work well, and she looked for opportunities to advance.  But she was continually held back and ultimately fired for speaking up.

31.    Ms. Silva seeks justice for herself and for other women who have been discriminated against and retaliated against by Panasonic.

**PARTIES, JURISDICTION & VENUE**

32.    Plaintiff Tatyana Silva is, and at all times relevant to this Complaint was, a United States citizen, and a woman of Northern Asian/ Siberian ethnic origin.  Ms. Silva is over the age of 40, and a resident of Sparks, Nevada.

33.    She has over fifteen years of experience in technology, analytics, and the Internet of Things (IOT).  IOT refers to electronics, communications, computer science engineering, and machine learning, as well as devices with sensors, processing ability, software and other technologies that connect and exchange data with other devices and systems over the internet or other communications networks.  She previously worked for

Intel Corporation, Symantec, General Electric Healthcare, and other technology companies.

34.    In addition to her Master of Science in Predictive Analytics from Northwestern University, and a Bachelor of Science with a Major in Finance and a Minor in Computer Science from the University of Utah, Ms. Silva completed a two-year Certified IOT Specialist program at Multnomah University, Reno in 2020. Ms. Silva holds a PMP (Project Management Professional) Certification and SCM (Certified Scrum Master) Certification. She was named Woman of the Year in IOT by the Connected World Magazine in 2019, and has appeared on The Peggy Smedley Show to discuss her achievements in technology.  Currently, Ms. Silva is an MBA Student at the University of Nevada at Reno and a participant in the Washoe County Leadership Academy.

35.    Plaintiff was employed by Defendant in Sparks, Nevada. Defendant's conduct at all relevant times occurred in Sparks, Nevada.

36.    Defendant Panasonic is a Delaware corporation that, on information and belief, had its principal place of business at all relevant times in Sparks, Nevada. Defendant designs and manufactures batteries for use in electric vehicles at the Gigafactory in Sparks, Nevada.  Defendant was at all relevant times an employer as defined in Section 701(b) of Title VII and Nevada Fair Employment Practices Act, Nev. Rev. Stat. §613.310(2).

37.    Defendants DOES 1 through 10 are sued under fictitious names because their true names and capacities are unknown at this time. Plaintiff will amend this Complaint to allege DOE Defendants' true names and capacities when ascertained. Plaintiff is informed and believes and thereupon alleges that at all material times herein, each Defendant named herein, including DOES 1 through 10, acted as the agent, employee, supervisor, joint venture, representative, and/or alter ego of or for the other Defendants; all aided and abetted the wrongful acts of the others; and all are subject to the jurisdiction and venue of this Court.  In doing the things herein alleged, each and every Defendant was acting within the course and scope of this agency or employment

and was acting with the consent, permission, and authorization of each of the remaining Defendants. All actions of each Defendant were ratified and approved by the officers or managing agents of every other Defendant.

38.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and §1343. Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§1331 and 1343(a)(4). The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over claims under the Nevada Fair Employment Practices Act, Nev. Rev. Stat. §613.330.

39.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

40.     Ms. Silva was hired by Panasonic in August 2021 as an Agile Engineering Program Manager to build a Smart Factory within the Engineering Program Management group at the Gigafactory in Sparks, Nevada. She was promoted to Senior Program Manager within months of her hire, but she did not receive an increase in pay. On information and belief, other male employees who were promoted by Panasonic from Program Manager to Senior Program Manager title received an increase in pay during the 2021-2023 time period.

41.     For the first year of Ms. Silva's employment, she was running Panasonic's Smart Factory program, creating requirements, evaluating vendors, and managing her team. Her supervisor was Tom Lake, and she worked closely with Wei Zhou, a woman who was the director of DTG.

42.     In or about early April 2022, Justin Herman joined Panasonic as the new Chief Information Officer (CIO). After Mr. Herman started, Wei Zhou, the female director of DTG, left.

43.     In about May 2022, Ajay Gnanasekaran, Director of PMO, became Ms.

Silva's direct supervisor.

44.    Ms. Silva filled in helping Mr. Herman with DTG until Mr. Herman hired a man named Neeraj Mittra to run DTG.  Ms. Silva was not involved in the hiring. Mr. Herman informed Ms. Silva that Mr. Mittra was not his first choice, but it was difficult to find a qualified candidate.

45.    On or about July 19, 2022, Ms. Silva met Mr. Mittra for the first time.  He asked her "where she was from."  She explained that she was from Kazakhstan, and he made a facial expression indicating he did not like her response.

46.    Ms. Silva continued to run DTG meetings with vendors that week for the next four days, and Mr. Herman and Mr. Mittra sat in on the meetings along with other DTG team members.

47.    On or about Monday, July 25, 2023, Panasonic Employee 1, asked how Ms. Silva's relationship was with Mr. Mittra.  Ms. Silva thought it was sort of an unusual question, and told Employee 1 that they should give Mr. Mittra a chance as he was new and everyone is a bit overwhelmed in their first months in the factory.

48.    Employee 1 told Ms. Silva that she should "watch her back," as she was a very strong woman, and Employee 1 related that Mr. Mittra had said about Ms. Silva that "women in India do not behave like that."  Employee 1 said that Ms. Silva needed to "stroke" or "strike" Mr. Mittra's ego, and that Mr. Mittra was planning to manage her out.

49.    Ms. Silva thought this was very odd as there was not enough time to warrant such an attitude from Mr. Mittra, as they had barely worked together.

50.    Two days later, on or about July 27, 2023, Ms. Silva first discovered that she had not been invited to a DTG meeting on Monday and to DTG discussions about vendors.  At first, she thought it was a mistake, so she called Mr. Mittra on July 27 to ask what was going on.

51.    He told her, "this is only for technical people.  You are not technical."

52.    Ms. Silva asked Mr. Herman why this was happening, and Mr. Herman said

that Ms. Silva had to "sort it out" with Mr. Mittra.  But Mr. Mittra never responded to any of her requests to communicate.

53.     Shortly after, on information and belief, Mr. Herman, Mr. Mittra, and Mr. Gnanasekaran met to discuss Ms. Silva.  During the week of August 1, Ms. Silva was removed from working on the Smart Factory project.  She was given no explanation about why she was removed.  Ms. Silva was incredibly passionate about the Smart Factory project and believed in the capacity of the company to build a new type of factory for the twenty-first century and beyond.

54.     On or about August 31, 2022, Ms. Silva called Mr. Herman and asked him why her technology career was being derailed.  He told Ms. Silva that she "did not fit." When she asked him to explain why, he said it was not a phone conversation and that he would talk to her when he was next in Reno.  She raised concerns about Mr. Mittra's behavior. He refused any further conversations with Ms. Silva.

55.     On or about September 12, 2022, Mr. Gnanasekaran informed Ms. Silva that she was being removed from every project she was working on at Panasonic.

56.     Ms. Silva was absolutely devastated by the removal of her work duties, and experienced extreme emotional distress about the derailment of her career.

57.     She spoke to her doctor about it, and her doctor told Ms. Silva that "You have the right to be angry at how they are treating you."  She also spoke to a therapist specializing in workplace conflict, and he told her that she should quit her job and file an EEOC complaint against Panasonic for gender, race, and national origin discrimination. Ms. Silva took FMLA leave to deal with her severe distress.

58.     In October 2022, Ms. Silva complained to Human Resources about the blatantly sexist treatment that she was receiving at work. HR did not nothing to fix the situation.

59.     On or about October 5, 2022, Ms. Silva met with HR representative Michael Togbe.  She asked Mr. Togbe directly why she had been removed from working on the Smart Factory, and why Mr. Mittra thought it was appropriate to discriminate

against her because she was a woman and not Indian.  Mr. Togbe did not give her any answers.

60.    Shockingly, Mr. Togbe told her that Mr. Herman and her supervisor were concerned that Ms. Silva kept talking about the Smart Factory work after her removal from the project, and that they were concerned that she was so upset, and that they wanted her to "smile."  Mr. Togbe told her that they said that they wanted "old Tanya back."  But they did not want to give Ms. Silva her work back.

61.    Mr. Togbe also admitted that Mr. Mittra had told Mr. Gnanasekaran to "manage her out" by giving her menial tasks so that she would quit.

62.    Ms. Silva explained her career aspirations to Mr. Herman, telling him that she would like to build a Smart Factory, as she would be one of very few women in the world to do so. By taking on such an ambitious project, she hoped she could earn promotion to Director of Technology at Panasonic Energy and in five- to seven years become CIO.

63.    But Mr. Herman did not like Ms. Silva's ambition.  On information and belief, Mr. Herman had the audacity to complain to HR about Ms. Silva talking about her employment opportunities.

64.    HR then told Ms. Silva that she should not talk to Mr. Herman about her career aspirations.  Ms. Silva asked why some people at the Gigafactory were asked to fill out a "career succession plan", but she was not allowed to even talk about her career plans. Ms. Silva raised concerns that if she was not on an internal succession plan, she would have no future at Panasonic, but her concerns were ignored. Ms. Silva had observed that when people were on a succession plan, it was pointless to apply for an internal job they had been chosen for, as only the chosen ones who had been tapped on the shoulder would get those jobs.  Panasonic would pretend to interview candidates when the true candidate had already been selected.

65.    In early October 2022, DTG had a team building activity, and the DTG team was on site instead of their usual practice of working remotely.

66.     Ms. Silva saw a female colleague, Panasonic Employee 2, from DTG, in distress and crying.  Ms. Silva asked what was wrong.  Her colleague stated that tomorrow was her last day at the factory after five years there, that she and Mr. Mittra did not see eye to eye, and that he was harassing her.  Mr. Mittra did not even acknowledge to the team that she was leaving.

67.     A few weeks later, on information and belief, another female employee, Panasonic Employee 3, who had been a technical employee, submitted her resignation because of the environment Mr. Mittra had created in the workplace.

68.     A few weeks later, on information and belief, another female employee, who had also been with Panasonic for five years, Panasonic Employee 4, submitted her resignation.  She told Ms. Silva that Mr. Mittra was one of the main reasons why. Employee 4 wrote extensively about what HR could do to mitigate the situation of the toxic work environment Mr. Mittra had created. Employee 4 showed Ms. Silva that document, and on information and belief, Employee 4 sent the document to HR before leaving.

69.     A few weeks later, yet another woman, Panasonic Employee 5, also submitted her resignation.  They were all women in Mr. Mittra's organization, they were all subject matter experts, and they were all "managed out" by Panasonic in deference to Mr. Mittra's sexism and sex discrimination.

70.     Starting in the fall of 2022 and into 2023, Ms. Silva also observed that Mr. Mittra seemed to be favoring Indian men over other employees.  He repeatedly hired Indian men while managing out women.  Non-Indian men were either managed out or submitted their voluntary resignation or asked to be moved to other parts of Panasonic.

71.     In November-December 2022, Ms. Silva applied for a promotion to PMO Director.  She was denied the promotion in favor of Eli Venecia, a less qualified male employee.  Mr. Venecia then became Ms. Silva's direct supervisor.

72.     In November and December 2022, multiple people came to Ms. Silva separately, asking her to start working on the Smart Factory project again, including DTG

employees as well as the Capgemini account manager, who did not like how Mr. Mittra treated consultants.

73.    On or about November 28, 2022, Ms. Silva sent Mr. Herman an email asking about Panasonic's Smart Factory project, as multiple individuals had told Ms. Silva that the project was being mismanaged by Mr. Mittra.  Mr. Herman did not agree to let Ms. Silva work on the project.

74.    In December 2022, Ms. Silva went to talk to Eli Venecia at lunch time in the cafeteria and told him, "Eli, I will do whatever you tell me to do for the next five years, but please, let me do Smart Factory. They took my baby from me, and it is dying." Mr. Venecia agreed to do what he could to help.

75.    Mr. Venecia later told Ms. Silva that he called Mr. Herman to ask about it, and Mr. Herman told Mr. Venecia no, that Ms. Silva could not return to her work on the Smart Factory.

76.    On or about February 5, 2023, Ms. Silva asked Mr. Herman to have a meeting with HR as Mr. Herman had never explained to Ms. Silva why she was not a "fit."  Mr. Herman said he would schedule the meeting himself. Ms. Silva sent him and Mr. Burke a list of technical improvements to HR systems (human resources and payroll) that she could do if they let her use her expertise in technology systems.  At that point, she still held out hope that the treatment she had faced could be fixed if she simply explained what was going on and showed them what she could do. Mr. Herman never scheduled such a meeting.

77.    In early 2023, Mr. Venecia provided Ms. Silva with positive feedback about her work.  On or about March 10, 2023, he wrote her a glowing letter of recommendation in which he referred to her as "highly capable," said that he "enthusiastically recommend[ed]" her, and that he was "confident without reservation" that Ms. Silva would be an "excellent fit" for an evening MBA program.

78.    But she continued to face sexist treatment at work.  During the PMO team's meetings, male team members joked that Ms. Silva "had to order lunches" for them. Men

discussed what kind of food she should order for them. Ms. Silva complained to Mr. Venecia about this behavior, and he told her he would take care of it.

79.    In or about February or March 2023, Ms. Silva was told by Jan Topor, Panasonic's Environmental Health & Safety Operations Manager, that she had violated Panasonic's dress code by wearing dresses to work. Ms. Silva had been wearing dresses to the office for over a year, and no one had complained before, nor was she aware of any safety issues associated with wearing a dress for office job. Ms. Silva asked Mr. Topor to show her where in the Employee Handbook it was stated that Panasonic employees were not allowed to wear dresses to the office. She never received such documentation.

80.    Ms. Silva requested permission to travel to conferences as male Panasonic employees were allowed to attend conferences.  Mr. Venecia denied her request to attend conferences, stating they were not needed for her.

81.    Ms. Silva requested certain project manager software tools she needed for her work, which male employees on her team were using, but she was told she could "use excel" and she did not need any training nor tools her male colleagues had.

82.    And then during early 2023, Mr. Venecia began inviting Ms. Silva for one-on-one meetings in the cafeteria, where he would buy her (non-alcoholic) drinks, whereas he met with other employees in more formal settings.  He began to make other requests to spend time together outside of the workplace, such as meeting offsite in a hotel conference room.  This made Ms. Silva feel uncomfortable, and she declined to meet with him outside of work.

83.    Mr. Venecia told Ms. Silva that she was special, and that men treated her badly at the Gigafactory because they were jealous and could not have her.

84.    In the spring, Mr. Venecia also assigned Ms. Silva to remove junk from Gigafactory; when she pushed back, he threatened her to "do it or else". Ms. Silva was confused as to why she had been assigned to do trash removal, as the Project Management Office typically does not work on such tasks.

85.    On or about March 9, 2023, Ms. Silva interviewed for a Senior Program

Manager role as a People Manager.

86.    On or about March 14, 2023, Ms. Silva found out she did not get the promotion.  That same day, Mr. Venecia told Ms. Silva that she did not get the People Manager role because "you would get paid more than me and that is unacceptable" and because she "was emotional."

87.    Later that same day, Ms. Silva again spoke with HR about the declined promotion.  HR representative Yolanda Andersen asked Ms. Silva if she thought she had a career at the Gigafactory.  Ms. Silva said no, that she felt her career had been derailed since she was removed from DTG/ Smart Factory work.

88.    On or about April 24, 2023, Ms. Silva asked the Head of Coaching to speak to Mr. Venecia about his behavior toward her, and to provide him with some education about unconscious bias, especially toward women.  She mentioned her concerns about the garbage removal assignment. She also stated she thought he needed diversity training because of the comments he made when he explained why he did not give her the People's Manager job.

89.    Ms. Silva contacted his coach because she did not want to report it to HR, and she hoped the executive coach would address those issues without HR involvement. The coach reassured her that she would address it, and that everything they spoke about was confidential.

90.    Previously, in January 2022, Mr. Venecia had invited his coach to his 1:1 meeting with Ms. Silva so his coach could evaluate how he communicated with Ms. Silva. The coach pointed out after the meeting that Mr. Venecia did not listen to Ms. Silva, that he interrupted her, and that he dismissed her suggestions during the 1:1 meeting.  Mr. Venecia then apologized in January 2023 for this behavior.  Ms. Silva believed she saw that Mr. Venecia was trying to improve his management style and assumed it was safe to share information with the coach in April.  Ms. Silva trusted that her concerns about Mr. Venecia's behavior would be resolved.

91.    Ms. Silva was removed from any PMO discussions in early April. When

she asked Mr. Venecia why, he stated she did not need to participate. Ms. Silva perceived it as a direct attempt to undermine her work, as she was working on the Panasonic Strategic Portfolio with Supply Chain, Engineering, Environmental, Health & Safety (EHS), Finance, Maintenance, HR, and other departments to align with Allan Swann's strategic vision for 2023-2027.

92.    During April and May, Ms. Silva was not invited to any candidate interviews held by the PMO. When Ms. Silva asked why she was being excluded, Mr. Venecia told her he was not the one conducting interviews. When she asked the hiring manager, he was not able to explain why he invited a male Panasonic employee, but not Ms. Silva, to participate in the interviews.

93.    On or about April 25, 2023, Ms. Silva spoke with Panasonic's legal counsel about the discrimination and harassment she was facing, explaining that she was being discriminated against on the basis of gender and national origin.

94.    On or about April 27, 2023, Mr. Venecia retaliated against Ms. Silva for raising complaints about discrimination and harassment, and issued a "Memorandum of Behavior" to Ms. Silva, which contained false allegations regarding her performance and stated that she could not discuss technology jobs at Panasonic nor the Smart Factory.  The Memorandum was delivered by Mr. Venecia and Jennifer Gilbert, HPC coach. When Ms. Silva asked why they were supporting Mr. Mittra's behavior, she received no answer. When Ms. Silva asked that they explain why she was being treated like this, Jennifer Gilbert told her in a very sarcastic tone, "sometimes we don't need to tell you WHY".

95.    On or about May 12, 2023, Ms. Silva was given an "improvement needed" assessment that impacted her raise and bonus, which contained false allegations about her behavior and performance.  Mr. Venecia stated he "did not have issues with her performance", but told her that her complaints about Mr. Mittra in Fall 2022 were the reason for her "improvement needed" rating.  Mr. Venecia also accused her of being the reason why there were numerous safety incidents at the Gigafactory. Ms. Silva was shocked as she was trying to ensure no catastrophic events would happen despite battery

safety not being her area of expertise, and despite having been denied training and support for such work.

96.     Previously, Ms. Silva had identified issues with Gigafactory safety and reported it to EHS, HR, and Mr. Venecia. They all ignored such issues, but Mr. Venecia claimed it was Ms. Silva's fault that critical safety incidents were happening at Gigafactory. Ms. Silva did not have a background in workplace safety, and had asked Mr. Venecia to provide her with basic occupational safety training, so that she could design a safety program for Panasonic, but Mr. Venecia refused. Ms. Silva had no training in OSHA rules or battery manufacturing safety. Ms. Silva complained to Panasonic's legal counsel about Mr. Venecia's behavior.

97.     In response to Ms. Silva having raised workplace safety concerns with Mr. Herman, HR Representative Anderson had asked Ms. Silva why she was still talking to Mr. Herman when she was forbidden to talk to him. Ms. Silva was surprised to learn she was completely forbidden to talk to Mr. Herman, as she knew she was prohibited to talk to him about her career, but not about Gigafactory matters.

98.     Ms. Silva explained that she contacted Mr. Herman because she believed he was the owner of the system of concern for safety. Ms. Silva explained her concerns about Gigafactory's safety, and Ms. Andersen said, "this is not your load to carry." Ms. Silva stated she did not want to die, and she would never forgive herself if something happened to all the people in the Gigafactory because she did not scream loud enough. Ms. Andersen referred her concerns to the Panasonic Ethics and Legal department.

99.     In addition to safety concerns, starting in or about April 2023, Ms. Silva had identified some financial discrepancies in Panasonic's Strategic Portfolio and reported it to the Finance Director, CFO, Mr. Venecia, and Wes Sloan, EVP.  In or about May 2023, Wes Sloan requested that Ms. Silva hold a meeting with all the relevant departments' directors. Ms. Silva held one meeting with the directors in June 2023 and had scheduled a follow up meeting on July 26, 2023. Mr. Sloan was pleased with the first meeting.

100.    On or about May 28, 2023, Ms. Silva filed an EEOC charge regarding Panasonic's discriminatory treatment of her.  Ms. Silva informed Defendant that she had filed an EEOC charge.

101.    On or about June 2, 2023, in a meeting with Panasonic Employee 6 regarding Panasonic Energy Tactical and Strategic Portfolio, Mr. Venecia pretended Ms. Silva was not there, and then yelled at Ms. Silva and gave her contradictory instructions about an upcoming meeting in an effort to set her up for failure, intentionally creating unclear performance expectations.

102.    On or about June 8, 2023, Ms. Silva was informed by Panasonic Employee 7, that Mr. Mittra had told colleagues not to speak to Ms. Silva in an effort to ostracize her.

103.    On or about June 19, 2023, Ms. Silva spoke to Rene Perez Cabrera, HR Director and Jarelle Goforth, his assistant. Rene informed her that all her complaints were "unsubstantiated" and "no one is getting fired". Mr. Cabrera knew that Ms. Silva had filed an EEOC charge/ NERC charge.

104.    Ms. Silva sent an email to Mr. Venecia requesting to be reassigned from the Nevada Project Management Office to Panasonic's new Kansas PMO, along with her two interns, citing the hostile work environment she was facing at work, and Mr. Venecia's attitude towards her. Mr. Venecia told her he would discuss it with Kansas's PMO.

105.    Ms. Silva communicated to Mr. Cabrera her concerns about Mr. Venecia's behavior. Mr. Cabrera told her they would meet the following week (the week of July 17th) to discuss.

106.    On or about July 19, 2023, Ms. Silva was informed by Defendant's Executive Vice President, Wes Sloan, and VP of HR Tim Burke, that she was being terminated because she violated the "behavioral" part of Mr. Venecia's Memorandum, and because she had allegedly filed a "false" claim of sexual harassment. They did not say she was terminated because of her performance.  Mr. Sloan acknowledged that Ms. Silva's recent work at an important meeting on July 14, 2023, had gone well.

107.    Mr. Burke, VP of HR was also present in that meeting, and he stated that "everything you invent or will invent belongs to Panasonic indefinitely."

108.    Ms. Silva asked for any paperwork explaining why she was being terminated or why or how all her possible future inventions belonged to Panasonic, but Mr. Burke stated "I do not have any paperwork for you." Ms. Silva thought this was odd, given that he was a VP of HR.

109.    In fact, Ms. Silva was terminated on the basis of her sex (female), national origin (non-Indian), for raising concerns about how she and other women were treated by Mr. Mittra, and how Justin Herman, CIO, and human resources did absolutely nothing about it, and/or in retaliation for complaining of discrimination and/or for not reciprocating Mr. Venecia's romantic interest in her.

110.    Ms. Silva cross-filed a charge with the Nevada Equal Rights Commission (NERC) and Equal Employment Opportunity Commission (EEOC).

111.    On or about August 28, 2023, NERC issued a right to sue letter at Ms. Silva's request based on her charge.  See Exhibits 1 and 2 hereto.

112.    Ms. Silva brings this lawsuit within 90 days of receiving the NERC charge.

113.    Ms. Silva experienced extreme emotional, psychological, medical, financial and economic damages along with the loss of professional reputation because of the illegal treatment she received from Mr. Sloan, Mr. Burke, Mr.  Herman, Mr. Venecia, Mr. Mittra, and others.

### FIRST CLAIM FOR RELIEF

### Sex Discrimination in Violation of 42 U.S. Code § 2000e–2(a)&(d)

114.    Plaintiff hereby incorporates by reference Paragraphs 1 through 113 inclusive of this Complaint as if fully set forth herein.

115.    At all times herein mentioned, 42 U.S.C. § 2000e-2 was in force and binding.

116.    The foregoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C.

§ 2000(e)-2(a)&(d).

117.    Ms. Silva was discriminated against in promotion, work assignments, and continued employment because she was a woman.  Discrimination against women at Panasonic was pervasive.  Panasonic removed Ms. Silva's job duties and denied her multiple promotions, all of which constitutes sex discrimination, in violation of 42 U.S.C. § 2000e-2(a) & (d).

118.    Ms. Silva filed a charge with NERC which was cross-filed with the EEOC, and she received Right to Sue letter from NERC.  She has commenced this action in a timely manner.  Accordingly, she has exhausted her administrative remedies.

119.    Panasonic's discriminatory employment practices described above have resulted in a loss of past and future wages for Ms. Silva, and she requests relief as set forth below.

120.    Panasonic has engaged in a pattern and practice of intentional discrimination against female employees.

121.    Panasonic has acted with malice or reckless indifference to the rights of its female employees, including Ms. Silva.  Ms. Silva is thus entitled to recover punitive damages in an amount to be determined according to proof.

## SECOND CLAIM FOR RELIEF

**National Origin Discrimination in Violation of 42 U.S. Code § 2000e–2(a)&(d)**

122.    Plaintiff hereby incorporates by reference Paragraphs 1 through 121 inclusive of this Complaint as if fully set forth herein.

123.    At all times herein mentioned, 42 U.S.C. § 2000e-2 was in force and binding.

124.    The foregoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e)-2(a)&(d).

125.    Ms. Silva was discriminated against in promotion, work assignments, and continued employment because she was not of Indian origin.  Panasonic removed Ms.

Silva's job duties and denied her multiple promotions, treating her differently than employees of Indian origin, all of which constitutes national origin discrimination, in violation of 42 U.S.C. § 2000e-2(a) & (d).

126.    Ms. Silva filed a charge with NERC which was cross-filed with the EEOC, and she received Right to Sue letter from NERC.  She has commenced this action in a timely manner.  Accordingly, she has exhausted her administrative remedies.

127.    Panasonic's discriminatory employment practices described above have resulted in a loss of past and future wages for Ms. Silva, and she requests relief as set forth below.

128.    Panasonic has acted with malice or reckless indifference to the rights of its non-Indian employees, including Ms. Silva.  Ms. Silva is thus entitled to recover punitive damages in an amount to be determined according to proof.

### THIRD CLAIM FOR RELIEF

### Sex Harassment in Violation of 42 U.S. Code § 2000e et seq.

129.    Plaintiff hereby incorporates by reference Paragraphs 1 through 128 inclusive of this Complaint as if fully set forth herein.

130.    At all times herein mentioned, 42 U.S.C. § 2000e was in force and binding.

131.    The foregoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e).

132.    The gender-based harassment faced by Ms. Silva was so severe and pervasive that it created a hostile and offensive work environment, and resulted in adverse employment decisions and a loss of past and future wages.  Additionally, Ms. Silva was subjected to quid pro quo sexual harassment from Mr. Venecia.  After rejecting his advances, and complaining about his behavior, he retaliated against her.

133.    Ms. Silva filed a charge with NERC which was cross-filed with the EEOC, and she received Right to Sue letter from NERC.  She has commenced this action in a timely manner.  Accordingly, she has exhausted her administrative remedies.

134.    Panasonic has engaged in a pattern and practice of permitting a hostile and offensive work environment for its female employees.  Panasonic has acted with malice or reckless indifference to the rights of its female employees, including Ms. Silva.  Ms. Silva is thus entitled to recover punitive damages in an amount to be determined according to proof.

## FOURTH CLAIM FOR RELIEF

### Retaliation in Violation of 42 U.S.C. § 2000e-3(a)

135.    Plaintiff hereby incorporates by reference Paragraphs 1 through 134 inclusive of this Complaint as if fully set forth herein.

136.    At all times herein mentioned, 42 U.S.C. § 2000e-3(a) was in force and binding.

137.    The foregoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e)-3, *et seq.*

138.    At all relevant times, Ms. Silva was performing her job satisfactorily. She was retaliated against after complaining of discrimination and sexual harassment at work. The removal of job duties, denial of promotion, and termination after Panasonic was well aware of Ms. Silva's complaint to the EEOC and NERC constitutes retaliation for protected activity, in violation of 42 U.S.C. § 2000e-3(a).

139.    Ms. Silva filed a charge with NERC which was cross-filed with the EEOC, and she received Right to Sue letter from NERC.  She has commenced this action in a timely manner.  Accordingly, she has exhausted her administrative remedies.

140.    Panasonic's discriminatory employment practices described above have resulted in a loss of past and future wages for Ms. Silva, and she requests relief as set forth below.

///

//

/

## FIFTH CLAIM FOR RELIEF

### Violation of Nev. Rev. Stat. § 613.330 - Discrimination

141.    Plaintiff hereby incorporates by reference Paragraphs 1 through 140 inclusive of this Complaint as if fully set forth herein.

142.    At all times herein mentioned, Nevada Revised Statute section 613.330 was in force and binding.  The foregoing conduct violates the statute.

143.    Ms. Silva was discriminated against in promotion, work assignments, and continued employment because she was a woman.  Discrimination against women at Panasonic was pervasive.  Panasonic removed Ms. Silva's job duties and denied her multiple promotions, all of which constitutes sex discrimination.

144.    Ms. Silva filed a charge with NERC which was cross-filed with the EEOC, and she received Right to Sue letter from NERC.  She has commenced this action in a timely manner.  Accordingly, she has exhausted her administrative remedies pursuant to Nev. Rev. Stat. § 613.430.

145.    Panasonic's discriminatory employment practices described above have resulted in a loss of past and future wages for Ms. Silva, and she requests relief as set forth below.

146.    Panasonic has engaged in a pattern and practice of intentional discrimination against female employees and against its employees of non-Indian origin.

147.    Panasonic has acted with malice or reckless indifference to the rights of its female and non-Indian employees, including Ms. Silva.  Ms. Silva is thus entitled to recover punitive damages in an amount to be determined according to proof.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

1.    All damages Ms. Silva has sustained as a result of Defendant's conduct, including back pay, front pay, general and specific damages for lost compensation and job benefits she would have received but for the discriminatory practices of Defendant,

according to proof;

      2.     Punitive and exemplary damages in amounts consistent with the law, which Ms. Silva intends to share with Washoe County schools and organizations promoting women in technology in India;

      3.     That Defendant be ordered to cease and desist from its unlawful employment practices permitting discrimination against its female employees, and a declaratory judgment that such employment practices as unlawful under 42 U.S.C. § 2000(e), Title VII of the Civil Rights Act of 1964;

      4.     For a public apology from Panasonic SVP Wes Sloan, and for diversity, equity, and inclusion training, and sexual harassment training, to be completed by Mr. Sloan, Mr. Burke, Mr. Herman, Mr. Mittra, and Mr. Venecia;

      5.     For prejudgment interest to the extent permitted by law;

      6.     For costs and expenses of suit incurred, including reasonable attorneys' fees, to the extent permitted by law; and

      7.     For such other legal and equitable relief as the Court may deem just and proper.

Dated: November 9, 2023         Respectfully Submitted,
                                      **McCRACKEN, STEMERMAN & HOLSBERRY**

                                      */s/Sarah Grossman-Swenson*
                                      Sarah Grossman-Swenson, SBN 11979
                                      1630 South Commerce Street, Suite A-1
                                      Las Vegas, Nevada 89102
                                      Phone:     (702) 386-5107
                                      Facsimile:  (702) 386-9848
                                      Email:      sgs@msh.law

                                      *Attorneys for Plaintiff Tatyana Silva*